UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-21219-CIV-MORENO/GOODMAN

KAY DARBY,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

<u>REPORT AND RECOMMENDATIONS ON DEFENDANT'S</u>
<u>*DAUBERT* MOTION</u>

This is a maritime personal injury action wherein Plaintiff "lost her footing" on what she claims was "an unreasonably and dangerous wet surface that was not objectively perceivable." [ECF No. 1, ¶ 12]. The incident occurred on deck 3 of Defendant's ship, the *Valor*. *Id.* Plaintiff alleges that as a result of the incident she "suffered traumatic injuries that included, but are not limited to, a torn rotator cuff and a torn bicep that required surgical repair" and injury to her back. *Id.*

Plaintiff sued Defendant for a single count of negligence and alleged eighteen different theories of negligence on the part of Defendant and a nineteenth, "catch-all," theory based on acts or omissions that would be revealed through discovery. [ECF No. 1,

¶¶ 36(a)-(s)].

Defendant filed a *Daubert* motion seeking to exclude Plaintiff's expert Francisco De Caso, Plaintiff filed an opposition response, and Defendant filed its reply. [ECF Nos. 94, 106, 109]. United States District Judge Federico A. Moreno referred to the Undersigned Defendant's *Daubert* motion for a Report and Recommendations. [ECF No. 100].[1] For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Defendant's *Daubert* motion.

## I. Background

Plaintiff retained Francisco De Caso to provide expert opinions about the cause of the subject incident. [ECF No. 108-1, p. 4]. Dr. De Caso has a Master of Engineering in Civil and Architectural Engineering from the University of Bath, England (UK) and a Ph.D. in Civil Engineering with an emphasis in structural engineering and material science from the University of Miami. *Id.* Dr. De Caso is also a Certified XL Tribometrist.[2] *Id.*

---

[1]    Judge Moreno also referred to the Undersigned Plaintiff's partial summary judgment motion [ECF No. 70] and Defendant's summary judgment motion [ECF No. 73]. *See* Referral Order [ECF No. 97]. On November 19, 2021, the Undersigned issued a Report and Recommendations [ECF No. 110] on Plaintiff's partial summary judgment motion [ECF No. 70]. The Undersigned will address Defendant's summary judgment motion [ECF No. 73] in a separate Report and Recommendations.

[2]    "A tribometrist is a person who measures slip resistance using a tribometer." *Hoffee v. Walmart Inc.*, No. 3:18-CV-01497-AC, 2019 WL 6971039, at *5, n.3 (D. Or. Dec. 19, 2019).

Dr. De Caso reviewed some of the filings in this case, including the complaint, the answer, some discovery responses and both parties' initial disclosures. [ECF No. 108-1, p. 5]. As discussed below, Dr. De Caso inspected the area of the vessel where the incident took place, took photographs, conducted a lighting or illuminance survey, and performed slip-resistance testing using an English XL tribometer. *Id.* at 6, 9-14.

Dr. De Caso stated that the methodology he used was the scientific method. [ECF No. 108-1, p. 7]. He explained that there are "three criteria for establishing cause and effect relationships." *Id.* These criteria are "a) association: establishing causality between independent and dependent variable[s]; b) temporal precedence: determining the time order of the variables, the cause has to occur before the effect; and c) non-spuriousness: ruling out alternative explanations for the observed relationship between variables." *Id.*

Dr. De Caso cited the competence press model and noted that there were multiple factors that lead to a slip and fall such as intrinsic factors (person) and extrinsic factors (environment). [ECF No. 108-1, p. 7]. Dr. De Caso further stated that "the report addresses primarily extrinsic factors (*i.e.* environment factors)" and that "explicit intrinsic factors (*i.e.* the person, Ms. Kay Darby) such as physical health, walking gait cycle, balance, stability abilities . . . etc. at the time of the incident, [were] not parameters included in [his] investigation." *Id.*

As part of his investigation, Dr. De Caso inspected the hallway on deck 3 of the *Valor* and took numerous measurements of the area where Plaintiff slipped. [ECF No.

108-1, p. 8]. He explained that:

> All measuring equipment during the inspection was conditioned prior [to] recording measurements, providing sufficient time to ensure dimensional compensation changes due to temperature effects. Length measurements were recorded with a Leica DISTO D2 (a handheld laser distance-meter) with an accuracy of 1/16 (0.06) of an inch, a tape measure with an accuracy of 1/8 (0.125) of an inch, or a caliper with a precision of 1/1000 (0.001) of an inch, as necessary. Angle measurements were recorded with precision digital angle measuring levels with an accuracy of 0.1-degrees. Lighting measurements (in lux) were measured using a calibrated white LED light meter, Model LT40 by Extech Instruments.

*Id.* at 9. Dr. De Caso's report also includes pictures of the relevant sections of the *Valor. Id.* at 10-11, 13-14.

Dr. De Caso conducted an illuminance survey "to measure and evaluate the available illuminance at the: a) floor surface, and b) three feet above the surface, throughout the hallway connecting the lobby to the atrium theater." [ECF No. 108-1, p. 9]. He also conducted "[s]lip resistant index tests" using "a calibrated ASTM F2508 English XL Variable Incidence Tribometer (VIT)" in both wet and dry conditions. *Id.* at 12. The results of these tests were summarized in two tables: "Table 1 – Illuminance survey results" and "Table 2 – Surface evaluation test results." *Id.* at 11, 14.

Dr. De Caso discussed his use of the tribometer as follows:

> The English XL VIT instrument mimics significant biomechanical parameters of the human walking gait. The instrument is used stationary at the test location, where the angle and velocity of the leg operating mechanism, and the size and shape of the test foot replicate the heel strike of a human walking; the instrument also has a functional ankle. Thus[,] the leg of the English XL VIT is free to accelerate once a slip occurs, with a real-world human slip event, resulting in the slip resistant index. Prior to

4

conducting slip tests, a valid verification test was conducted on a calibrated tile. The standard Neolite test foot was re-conditioned and prepared as necessary per manufacturer's instructions during testing. In addition to the aforementioned standard test practice, protocols recommended by the equipment manufacturer were implemented during the inspection to ensure accurate testing.

[ECF No. 108-1, p. 12].[3]

In his Report, Dr. De Caso concluded that the increased risk of Plaintiff slipping and falling was due to: (1) "[i]nadequate and defective levels of artificial lighting resulting in a dangerous condition, reducing and impairing the ability of Ms. Kay Darby to safely visualize the floor surface" and (2)  an "[u]nreasonably dangerous floor surface when wet, due to the significantly low level of surface traction, resulting in a surface traction lower than an ice surface." [ECF No. 108-1, p. 17].

Dr. De Caso also concluded that these "hidden and hazardous conditions . . . **should have been known and appreciated** by those in control of the maintenance of the Carnival Valor." [ECF No. 108-1, p. 17] (emphasis added).

At the outset, the Undersigned finds that Dr. De Caso should not be permitted to opine on the issue of whether Defendant had constructive knowledge of any hazardous condition. "[O]pining on constructive or actual notice and assigning fault are legal conclusions that invade the province of the jury and are not helpful." *Holley (Gauntlett) v.*

---

[3]     As will be discussed in more detail below, Dr. De Caso is not a human factors expert and thus may not opine on matters related to human factors, such as gait. Nonetheless, Dr. De Caso should be permitted to testify as an expert on slip resistance, including the slip resistance values he obtained using a tribometer.

*Carnival Corp.*, No. 1:20-CV-20495, 2021 WL 5371507, at *9 (S.D. Fla. Nov. 18, 2021).

The Undersigned will address the parties' arguments and Dr. De Caso's other opinions below.

## II.   Legal Standard

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993). Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)   the testimony is the product of reliable principles and methods; and

(d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry, including: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact in understanding the evidence or in determining a fact at issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

As an overarching principle, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey*, 298 F.3d at 1256. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996), *aff'd*, 158 F.3d 588 (11th Cir. 1998) (quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds and appropriate validation." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005).

Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d at 1292; *see also Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

These reliability factors, however, are non-exhaustive. *Kumho Tire Co.*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method. . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7.

The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *United States. v. Frazier*, 387 F.3d 1244, 1244 (11th Cir. 2004). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341. Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prod. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer

no assistance to the jury must such testimony be excluded."). Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *Id.* at *7 (quoting *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341).

### III.   Plaintiff's Request for a *Daubert* Hearing

Embedded in her response (i.e., not as a separate motion and not listed in the title of her opposition memorandum), Plaintiff requested a *Daubert* Hearing in the event the Court has any doubts about Dr. De Caso's opinions. [ECF No. 106, p. 14]. "*Daubert* hearings are not required, but may be helpful in 'complicated cases involving multiple expert witnesses.'" *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 564-65 n.21 (11th Cir. 1998)); *see also United States v. Rodriguez*, 591 F. App'x 897, 899 (11th Cir. 2015) (stating that "it is clear that a district court need not conduct a *Daubert* hearing where one would be unnecessary").

Here, the parties have had ample opportunity to address the Court in their briefs. The parties' *Daubert* briefings have been comprehensive and extensive. Additionally, Plaintiff has submitted, as part of her opposition, Dr. De Caso's own point-by-point rebuttal (in the form of a declaration attached to her memorandum) to many of the grounds raised by Defendant in seeking to exclude his testimony. *See* [ECF No. 106-1] (Declaration of Francisco De Caso, Ph.D., LEED A.P., CXLT (hereinafter "De Caso

Declaration")). For these reasons, the Undersigned finds that a *Daubert* hearing is not necessary for the instant motion.

## IV.  Analysis

### a.  Qualification

Defendant argues that Dr. De Caso is not qualified to render opinions in the instant case because the subject incident occurred on board a vessel. Defendant notes that "Dr. De Caso does not have a degree in naval architecture or marine engineering," has never studied ship building, and has never designed a cruise ship (individually or as part of a team) or participated in the selection of flooring for use on any passenger vessel. [ECF No. 94, p. 4].

The Court does not need to devote much time to this argument. It is sufficient to note that Defendant has not identified anything uniquely maritime in nature about Plaintiff slipping on a wet surface. The Undersigned notes that this Court has permitted experts with land-based credentials to testify in maritime tort cases. *See, e.g., Goins v. Royal Caribbean Cruise, Ltd.*, No. 16-21368, 2017 WL 5891469, at *2 (S.D. Fla. May 31, 2017) (finding a civil engineer, who was not licensed as a marine or naval engineer, competent to testify as to a slip and fall on a vessel that was no different than a land-based slip and fall); *Peck v. Carnival Corp.*, No. 16-20214, 2017 WL 7726728, at *3 (S.D. Fla. July 13, 2017) (finding a licensed architect, despite having no special education, experience or specialized knowledge related to oceangoing vessels, competent to testify as to stairs that

were in no way uniquely maritime).

Dr. De Caso holds a doctorate in civil engineering and has been qualified to testify as an expert in other slip and fall cases involving vessels. *See, e.g.*, *Kessler v. NCL (Bahamas) Ltd.*, No. 1:19-CV-20583, 2019 WL 8128483, at *4 (S.D. Fla. Dec. 20, 2019) (excluding some of Dr. De Caso's opinions, but nonetheless concluding that "Dr. De Caso is qualified as a certified tribometrist and may render an expert opinion on slip resistance"); *Padula v. Carnival Corp.*, No. 16-23862-CIV-LENARD/GOODMAN, 2017 WL 7792714, *6 (S.D. Fla. Oct. 13, 2017) (excluding some of Dr. De Caso's opinions, but nonetheless concluding that he "may testify regarding the slip resistance of the surface of the floor.").[4] Dr. De Caso's lack of training, experience, or education specific to vessels is not grounds for excluding him as an expert.

Defendant also argues that Dr. De Caso may not testify about Defendant's compliance or non-compliance with any authoritative codes of industry standards because he has not presented any evidence of custom within the industry. [ECF No. 94, p. 5].[5] According to Defendant, the "American Society for Testing and Materials

---

[4]     In *Padula*, Dr. De Caso is referred to by his full name, "Francisco J. De Caso Basalo." 2017 WL 7792714, *1.

[5]     Defendant's argument regarding Dr. De Caso's reliance on non-maritime specific standards seems more appropriately a challenge to reliability. Because Defendant places this argument under the qualification heading, the Undersigned will address this argument in this section of the Report and Recommendations. Nonetheless, regardless of where this argument is specifically addressed in the Report and Recommendations, the Undersigned's analysis is based on the reliability prong. "[A]lthough there is some

International F1166-07 [(ASTM F1166-07)] 'Standard Practice for Human Engineering Design for Marine Systems, Equipment and Facilities'" is not a standard utilized by the maritime or cruise line industry. *Id.* at 5-6. Notably, Defendant has not supplied an alternative industry standard that would apply to the maritime or cruise ship industry.

Defendant further states that the ASTM F1166-07 "standard is currently undergoing revisions, as the 0.60 coefficient of friction standard value was removed due to not being scientifically defensible." [ECF No. 94, p. 6]. Defendant does not provide a citation for its assertion that the ASTM F1166-07 standard is being revised, nor does it even state when the revisions began.

The Undersigned is not persuaded by Defendant's argument that Dr. De Caso's opinions should be excluded because he relies on the ASTM F1166-07 standard. The Undersigned notes that this specific standard has been cited in other maritime cases. *See, e.g.*, *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1282 (11th Cir. 2015) (discussing ASTM F1166-07 and noting that "[e]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence") (citation and internal quotation marks omitted); *Scaccetti v. NCL (Bahamas) Ltd.*, No. 17-23888-CV, 2018 WL 6113467, at *6 (S.D. Fla. Nov. 21, 2018) (discussing ASTM standards, including ASTM F1166-07, and noting that defendant was "free to explore at trial whether

---

overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341.

those standards should be used in the maritime passenger context, and – if so – whether the standards discussed by [the plaintiff's expert] would have any applicability in the area of the vessel where [the] . . . incident allegedly occurred").

To the extent that the ASTM F1166-07 standard is undergoing revisions or is fundamentally not the appropriate standard to apply to the area where Plaintiff slipped, those topics are fodder for cross-examination. The Undersigned finds that Dr. De Caso's reliance on ASTM F1166-07 in formulating his opinions is not grounds for excluding him or portions of his opinions under *Daubert*. The Undersigned's finding, however, does not encompass whether the ASTM F1166-07 standard or any other standard will be admissible at trial. *See Altidor v. Carnival Corp.*, No. 20-CV-21516, 2021 WL 3163650, at *12 (S.D. Fla. July 27, 2021) (issuing rulings on *Daubert* motion, but including the caveat that the District Court would later determine the precise purposes for which non-binding standards would be admissible at trial and the extent to which the expert would be able to rely on them).

Defendant also states that "while Dr. De Caso correctly utilizes the SOLAS flooring regulations for slip resistance, which state that floor surfaces must be slip-free underfoot,"[6] SOLAS does not assign a coefficient of friction standard value to the term "slip-free under foot" and thus, "Dr. De Caso must be precluded from providing his own

---

[6]      The acronym "SOLAS" refers to the International Convention for the Safety of Life at Sea (SOLAS). *See* De Caso Declaration at 2.

13

interpretation of what SOLAS meant in its standard." [ECF No. 94, p. 6].

It does not appear to the Undersigned that Dr. De Caso is attempting to decipher what *SOLAS* itself meant by the term "slip-free under foot." Dr. De Caso's declaration readily acknowledges that "SOLAS does not make any other references to any other standards or test methods . . . related to pedestrian safety." De Caso Declaration at 2. As a result, Dr. De Caso states that he turned to "referenced publications, standards, and scientific knowledge" cited in his report. *Id.* In any event, Defendant is free to question Dr. De Caso at trial about the fact that SOLAS does not provide a value for the term "slip-free under foot."

Lastly, Defendant argues that Dr. De Caso is not qualified to render opinions about lighting in two respects. [ECF No. 94, p. 6-7]. First, Defendant argues that the standards set forth by the Illuminating Engineering Society of North America, cited in Dr. De Caso's report, are not marine-based standards and that Dr. De Caso has not presented any evidence of custom in the industry. *Id.* at 6. Second, Defendant argues that Dr. De Caso has no "qualifications in illumination engineering or lighting measurements." *Id.* at 7.

As will be discussed, in detail below, the Undersigned is persuaded by the second argument, that Plaintiff has not met her burden of showing Dr. De Caso is qualified to render opinions on lighting issues. Therefore, it is not necessary to address the first argument, that the IES's standards do not apply to the instant case.

Concerning Dr. De Caso's qualifications to render opinions about lighting, his declaration states that "IES recognizes multiple professional qualifications," including LEED A.P., which stands for Leadership in Energy and Environmental Design Accredited Professional. De Caso Declaration at 3. Dr. De Caso holds a LEED A.P. by the U.S. Green Building Council. *Id.* That is it. That is the extent of Dr. De Caso's training or expertise in illumination engineering or lighting mechanics.

The Undersigned notes that Dr. De Caso's *curriculum vitae* does not even show him being a member of IES. Although his C.V. lists the LEED A.P. certification, neither his C.V. nor his post-*Daubert* motion declaration [ECF No. 106-1] explains what is necessary to obtain this certification. Apparently, not much – as someone can obtain a LEED A.P. by taking an online exam.[7]

In addition, there is nothing in Plaintiff's response or Dr. De Caso's declaration which shows that the LEED A.P. certification incorporates a substantial amount of expertise about lighting. In order to sit for this exam, one must be at least eighteen years old and hold a current LEED Green Associate credential, "[e]xperience working on

---

[7]      The Undersigned takes judicial notice of the U.S. Green Building Council's website, wherein it explains that "[t]he LEED A.P. exam[ ] measure[s] knowledge about green building, a specific LEED rating system and the certification process" and "is ideal for individuals who are actively working on green building and LEED projects." https://www.usgbc.org/credentials/leed-ap (last visited Nov. 23, 2021).

LEED-registered projects is strongly recommended," but not required.[8]

Moreover, even if a certification-holder like Dr. De Caso would need substantial background in lighting issues to obtain the LEED A.P. certification, his C.V. does not reveal much, if any, actual work in the illumination field. According to his C.V., he has not written any books, monographs, abstracts or articles about lighting issues, nor has he done any research into lighting issues. Likewise, his C.V. does not show any lighting-involved exhibitions he attended or participated in during his career. Additionally, although he has editorial responsibilities for nine journals, none involve lighting. Instead, those journals involve structures, building materials, and construction projects.

To be sure, "[t]he qualification prong is not rigorous; so long as an expert is minimally qualified, objections to the level of the expert's expertise go to the credibility and weight of the testimony, not to its admissibility." *Medeiros v. NCL (Bahamas) Ltd.*, No. 19-CV-20957, 2020 WL 9549852, at *2 (S.D. Fla. Mar. 5, 2020). *Daubert* and Federal Rule of Evidence 702 permit a witness qualified by "knowledge, skill, experience, training or education" to provide opinion testimony.

At the same time, the qualification prong is not flexible enough to permit a person who merely passes an online course and does not have substantial experience to clear the qualification hurdle.

---

[8]     *See* LEED A.P. exam formats & procedures, available at https://www.usgbc.org/credentials/leed-ap#exam (last visited Nov. 23, 2021).

Here, the mere fact that Dr. De Caso may have taken an online course in order to obtain the LEED A.P. certification does not qualify him to issue expert opinions on lighting issues. Because Dr. De Caso is not qualified to render opinions on lighting issues, it is not necessary to address Defendant's argument that the IES is not the appropriate industry standard.

### b.     Reliability

Defendant challenges the reliability of Dr. De Caso's opinions. Defendant argues that Dr. De Caso does not provide any reference for the scientific methodology he purportedly used. [ECF No. 94, p. 7]. However, and as discussed above, Dr. De Caso's report states that he used the scientific method. [ECF No. 108, p. 7]. Dr. De Caso's declaration also discusses the "scientific methodology" employed in his report. *See* De Caso Declaration at 3.

Defendant also notes that while Dr. De Caso states that the risk of a slip and fall takes into account multiple factors "and discusses how using the competence press model can assess the probability of a slip and fall by looking at both intrinsic factors (person) and extrinsic factors (environment)," Dr. De Caso only addresses part of his equation because he only addresses the extrinsic factors and does not address the intrinsic factors. [ECF No. 94, p. 7-8]. Defendant further notes that Dr. De Caso is not a human factors expert and his opinions on human factors have previously been excluded. *Id.* at 8 (citing *Bostic v. Royal Caribbean Cruises*, No. 18-23694-Civ-COOKE/GOODMAN, 2020 WL

9459287, *2 (S.D. Fla. Sept. 11, 2020); *see also Padula*, 2017 WL 7792714, *5.[9]

Plaintiff argues that although "Dr. De Caso previously admitted that he was not an expert in human factors, . . . Defendant has not sought to depose Dr. De Caso to clarify whether he still does not consider himself to be an expert in human factors." [ECF No. 106 at 6]. While Plaintiff places the blame on Defendant for not taking Dr. De Caso's deposition, Plaintiff forgets that, as the proponent of the expert testimony, she has the burden of meeting the *Daubert* standard. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). Plaintiff has not presented any evidence that Dr. De Caso has gained education, training and/or experience in human factors in the interim. Therefore, to the extent that Dr. De Caso seeks to render any opinions based on human factors at trial, that testimony should be excluded.

Dr. De Caso has, however, been qualified as an expert on slip resistance. *See Kessler*, 2019 WL 8128483, at *4; *Padula*, 2017 WL 7792714, *6. Moreover, he is a Certified XL Tribometrist and may render opinions based on the tests he conducted in the instant case using the tribometer.

But the Undersigned agrees with Defendant that Dr. De Caso may not testify, as stated in his report, that the tribometer "mimics significant biomechanical parameters of

---

[9]     Defendant raised its human factors argument as part of its reliability argument, even though the human factors argument is more a qualification argument than a reliability argument. [ECF No. 94, p. 8-9]. Regardless of where this argument was raised, the Undersigned's analysis regarding human factors will focus on Dr. De Caso's lack of qualifications to render opinions based on human factors.

the human walking gait" because he is not a human factors expert. He may, however, discuss the slip resistance measurements he obtained while using the tribometer. *See Kessler*, 2019 WL 8128483, at *4 (finding Dr. De Caso could not render opinions on human factors but could render expert opinions on slip resistance based on measurements he calculated using a tribometer).

Defendant argues that the tribometer "is not generally accepted by the scientific community, and its usage has not been peer-reviewed, making it an ineffective instrument to use to measure the risk of a slip or fall." [ECF No. 94, p. 9]. However, there are numerous slip and fall cases wherein experts have used a tribometer to measure the slip resistance of a surface. In *Stern v. NCL Bahamas Ltd.*, a maritime slip and fall case, this Court noted that the XL tribometer is "a tool used to measure the slip resistance of particular walking surfaces which is commonly relied upon by experts in these types of cases." No. 19-20280-CIV, 2020 WL 6820877, at *5 (S.D. Fla. Sept. 28, 2020) (addressing motions *in limine*). In fact, in *Kessler*, Dr. De Caso was permitted to render expert opinions on slip resistance based on measurements he calculated using a tribometer. 2019 WL 8128483, at *4.

In furtherance of its argument that Dr. De Caso's opinions are unreliable, Defendant mentions Dr. De Caso's reference to the presence of CCTV when no footage of the incident exists. [ECF No. 94, p. 8]. The Undersigned notes that none of Dr. De Caso's opinions are based on either the presence of CCTV or video footage. Therefore,

Defendant's argument is not relevant to the Court's *Daubert* inquiry. Defendant is free to question Dr. De Caso regarding the various mistakes or incongruities in his report.[10] However, this is not grounds for the *exclusion* of his opinions.

Defendant also challenges the reliability of Dr. De Caso's opinions because he does not provide a degree of error for his testing. [ECF No. 94, at 10].[11] The reliability prong takes into consideration numerous factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d at 1292.

This list is non-exhaustive and in the context of reliability, trial courts are given "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Adams v. Laboratory Corp. of America*, 760

---

[10]    For instance, in section 3.4, wherein he describes the "ideal experiment," Dr. De Caso uses the last name of a different person (presumably another plaintiff) and describes the activity to be replicated in the experiment as "ascending the steps" when in fact the instant incident did not involve that person or any steps. [ECF No. 108-1, p. 8]. Similarly, in section 4 of his report, Dr. De Caso mentions the "Carnival Valor Spa" when the incident in question did not occur near a spa. *Id.* at 9.

[11]    In its reply, Defendant states that "Plaintiff addresses concerns of peer review and publication factors for the English XL and incorporated book that explains the tribometer," but continues to argue that Dr. De Caso's opinions based on his use of the tribometer should be excluded because he has not provided a known or potential rate of error. [ECF No. 109, p. 8].

F.3d 1322, 1327 (11th Cir. 2014) (quoting *Kumho Tire*, 526 U.S. at 152).

The Court has broad discretion, not only in determining an expert's reliability, but also in determining how to examine that reliability. *Kumho Tire*, 526 U.S. at 150-51. In *Milton v. C.R. Bard, Inc.*, for instance, the court was unpersuaded by the defendants' argument that the subject expert's "opinions [were] unreliable because they [were] not peer-reviewed, no rate of error [was] calculated, and the opinions [were] not generally accepted." No. 5:14-CV-00351-TES, 2021 WL 67356, at *6 (M.D. Ga. Jan. 7, 2021). The court noted that "[t]opics such as the lack of peer-review, testing, rate of error, and unaccepted techniques contained in [the subject expert]'s opinions should provide a target-rich environment for [defendants'] skilled attorneys on cross examination." *Id.* Similarly here, Defendant is free to cross-examine Dr. De Caso at trial regarding his failure to include any rate of error calculation for his testing.

Defendant also argues that Dr. De Caso's opinions should be excluded as unreliable because the coefficient of friction is the accepted method of measuring slip resistance on a vessel in accordance with case law. [ECF No. 109, p. 7]. Dr. De Caso states in his declaration that "COF (Coef. of Friction) - and slip resistance – [are] both properties of floor surfaces" and that "SOLAS does not state that COF is the accepted method" in determining slip resistance. De Caso Declaration at 4. For the reasons discussed above, the use of a tribometer in measuring slip resistance is an acceptable method. *See Stern v. NCL Bahamas Ltd.*, 2020 WL 6820877, at *5. To the extent Defendant disagrees, Defendant

is free to question Dr. De Caso on cross-examination.

    **c.**    **Helpfulness**

It is unclear whether Defendant challenges Dr. De Caso's opinions based on helpfulness. Defendant cites the helpfulness standard in its motion [ECF No. 94, p. 4], but it does not otherwise raise any specific arguments that Dr. De Caso's opinions would not be helpful to a jury. The Undersigned finds that Dr. De Caso's opinions on slip resistance (but not human factors, lighting or Defendant's constructive knowledge) meet the helpfulness prong.

An expert's opinion is helpful "if it offers something 'beyond the understanding and experience of the average citizen.'" *Frazier*, 387 F.3d at 1262 (quoting *United States v. Rouco*, 765 F.3d 983, 995 (11th Cir. 1985)). "[M]atters of slip resistance and surface friction are 'beyond the understanding and experience of the average lay citizen.'" *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011) (quoting *Rouco*, 765 F.2d 983, 995 (11th Cir.1985)). Therefore, Dr. De Caso's opinions on slip resistance meet the helpfulness prong.

**V.**    **Conclusion**

Dr. De Caso's expert report is far from perfect[12] and he is likely to be vigorously cross-examined on many of the substantive challenges asserted by Defendant in its

---

[12]    As noted above, there are numerous mistakes in Dr. De Caso's report which Defendant will likely cross-examine him on in hopes of undermining his credibility in front of a jury.

*Daubert* filings. Nonetheless, and as discussed above, Dr. De Caso should be permitted to offer some expert opinions at trial.

For the reasons stated herein, the Undersigned **respectfully recommends** that Judge Moreno **grant in part and deny in part** Defendant's *Daubert* motion seeking to exclude Francisco De Caso as an expert. Dr. De Caso should be permitted to testify about slip resistance, but not human factors, lighting issues, or Defendant's constructive knowledge.

## VI.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and Recommendations and shall bar the parties from attacking on appeal any factual or legal conclusions contained in this Report and Recommendations and to which they did not object, except upon grounds of plain error if necessary in the

interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley*

*v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); CTA11 Rule 3-1.

   **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on

November 23, 2021.

                  _____
                 Jonathan Goodman
                 UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Federico A. Moreno
All Counsel of Record

24