**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-21219-CIV-MORENO/GOODMAN**

KAY DARBY,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON DEFENDANT'S SUMMARY JUDGMENT MOTION

This is a maritime personal injury action involving Plaintiff's claim that she "lost her footing" on what she alleges to be "an unreasonably and dangerous wet surface that was not objectively perceivable." [ECF No. 1, ¶ 12]. The incident took place on deck 3 of Defendant's cruise ship, the *Carnival Valor*. *Id.* Plaintiff alleges that, as a result of the incident, she "suffered traumatic injuries that included, but are not limited to, a torn rotator cuff and a torn bicep that required surgical repair" and injury to her back. *Id.*

Plaintiff Kay Darby sued Defendant Carnival Corporation for a single count of negligence and alleged eighteen different breaches on the part of Defendant and a nineteenth "catch-all" provision based on acts or omissions that would be revealed

through discovery. [ECF No. 1, ¶¶ 36(a)-(s)].

Carnival filed a summary judgment motion, Darby filed an opposition response, and Carnival filed a reply. [ECF Nos. 73; 80; 84]. Defendant also filed a statement of facts [ECF No. 72] and Plaintiff filed a response to the statement of facts [ECF No. 79]. With the Court's permission, Plaintiff filed a supplemental response [ECF No. 87][1] and Defendant filed a supplemental reply [ECF No. 89].

Senior United States District Judge Federico A. Moreno referred to the Undersigned Defendant's summary judgment motion for a Report and Recommendations. [ECF No. 97].[2] For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Defendant's summary judgment motion.

---

[1]   As part of her supplemental response, Plaintiff attached the Declaration of Darlene Peryam [ECF No. 87-2], Plaintiff's sister. Defendant moved to strike Ms. Peryam's declaration. [ECF No. 88], arguing that because Plaintiff sought leave to file a supplemental response to obtain the deposition testimony of Defendant's corporate representative, Plaintiff should not be permitted to introduce this new declaration (i.e., testimony from someone other than Carnival's corporate representative). The Undersigned denied Defendant's motion to strike, finding that Ms. Peryam's declaration was not unduly prejudicial in that it merely confirmed Plaintiff's deposition testimony that there was some type of clear liquid on the floor where Plaintiff slipped. [ECF No. 105]. Accordingly, the Undersigned will consider Ms. Peryam's declaration in this Report and Recommendations.

[2]   Judge Moreno also referred Plaintiff's partial summary judgment motion [ECF No. 70] and Defendant's *Daubert* motion [ECF No. 94]. *See* Referral Orders [ECF Nos. 97; 100]. The Undersigned has addressed these motions in separate Reports and Recommendations [ECF Nos. 110; 111].

I.      **Undisputed Facts**[3]

1.      On or about October 11, 2018, Plaintiff was a passenger aboard the *Carnival Valor*.

2.      At all times material, Defendant owned and operated the *Carnival Valor*.

3.      The subject cruise departed from Galveston, Texas on October 11, 2018 and finished its voyage on October 15, 2018, when it returned to Galveston, Texas.

4.      On the first day of the cruise, Plaintiff and her companions were scheduled to take a photo at 5:00 p.m. on deck 3 of the ship.

5.      While walking to the photography area, Plaintiff "lost her footing" on the tiled floor near[4] the shore excursions desk.

---

[3]     The facts are generated from the paragraphs in the statement of facts or response to the statement of facts which the respective opposing party expressly agreed are undisputed. [ECF Nos. 72; 79]. For those purported facts which the opposing party classified as partly disputed, the Undersigned includes only the undisputed portions. The Undersigned will retain the paragraph numbering used by the parties. The abbreviation, "N/A," means that the paragraph is disputed. The Undersigned sometimes changed the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the source document, if needed.

If a party argued that a fact was disputed but did not provide record evidence to support the contention, then I deemed the fact to be *undisputed* if otherwise supported by record evidence.

[4]     Plaintiff takes issue with Defendant's description of the location where Plaintiff slipped as being "approximately 20 to 30 feet from the shore excursions desk." [ECF Nos. 72 at ¶ 5; 79 at ¶ 5].  Plaintiff cites to a portion of her deposition testimony where Plaintiff stated, "I can tell you it was more 20 than 90" feet. [ECF No. 79 at ¶ 5 (quoting [ECF No.

6.     Plaintiff reached out and grabbed her sister, Darlene Peryam, who was standing next to her in an attempt to stop herself.

7.     N/A.[5]

8.     Plaintiff contends she slipped because the surface was "wet" due to the presence of a liquid.

9.     Plaintiff wore sandal-like shoes[6] with a belt that secures them to the feet at the time of the incident.

10.    N/A.

11.    N/A.

_____

72-1 at 54:18-24]). The Undersigned finds that for summary judgment purposes it is sufficient to state that the Plaintiff slipped "near" the shore excursions desk.

[5]     The parties dispute whether Plaintiff actually hit the ground when she slipped. [ECF Nos. 72 at ¶ 7; 79 at ¶ 7]. Defendant cites a portion of Plaintiff's deposition testimony where she testifies that she does not "remember hitting the floor" and another portion of her deposition testimony where Plaintiff was asked if she was "unsure if [she] actually fell down onto the ground" and she responded that she was "not sure what [she] did." [ECF No. 73-1, pp. 52:13-14; 61:2-5]. Plaintiff cites to other portions of her deposition testimony and the guest comments log following the incident which seem to suggest that Plaintiff did hit the ground when she slipped. [ECF No. 79, ¶ 7]. Construing the facts in the light most favorable to Plaintiff, the record evidence suggests that Plaintiff did hit the ground when she slipped. However, for purposes of the instant summary judgment motion, whether Plaintiff actually hit the ground when she slipped is not a material fact. It is enough that Plaintiff slipped and, accepting Plaintiff's version of the facts, suffered injuries as a result.

[6]     Plaintiff disputes Defendant's description of Plaintiff's footwear. [ECF No. 79, ¶ 9]. The Undersigned finds that Defendant's description is fair, given Plaintiff's deposition testimony [ECF No. 72-1, p. 55:21-56:1]. However, this, too, is not a material fact for summary judgment purposes.

12.     Plaintiff cannot identify how long the alleged liquid was present before she slipped.

13.     Plaintiff did not see the liquid before slipping on it.

14.     After the incident, Plaintiff's niece went to the shore excursions desk to request that a crewmember clean the area.

15.     Plaintiff was standing against the wall near the incident location for "minutes" after she "lost her footing."

16.     Plaintiff did not see anyone clean the area in the minutes following the incident while she was standing against the wall.

17.     Plaintiff reported the incident to a crewmember at the shore excursions desk. She stated that she was in pain but that she would take an "Aleve and just see if [she] could get over it[.]"[7]

18.     Plaintiff does not know whether any crewmembers standing behind the shore excursions desk saw the incident.

19.     There were no witness statements or photographs in Defendant's possession regarding the incident. The only photographs were those furnished by Plaintiff during discovery.

20.     Plaintiff did not seek medical attention until after eating breakfast the next

---

[7]     Plaintiff disputes a portion of this fact as being taken out of context. [ECF No. 79, ¶ 17]. Because this portion is disputed and not material for summary judgment purposes, the Undersigned omitted it.

day.[8]

## II.     Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the nonmoving party "[a]fter giving notice and a reasonable time to respond." *See Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011).

The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).

---

[8]     There are twenty-one numbered paragraphs in Defendant's statement of facts [ECF No. 72]. However, the twenty-first paragraph is not a statement of fact, but rather a description of the manner in which Plaintiff pled her Complaint. *Id.* at ¶ 21. Thus, the Undersigned did not include this paragraph in the Undisputed Facts.

The Court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Id.* at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). To meet this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party." *Id.*

## III.    Applicable Law

"Federal maritime law applies to actions arising from alleged torts 'committed

aboard a ship sailing in navigable waters.'" *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787

F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d

1318, 1321 (11th Cir. 1989)). This Court has explained that:

> General maritime law is "an amalgam of traditional common-law rules,
> modifications of those rules, and newly created rules." *See East River
> Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65, 106 S. Ct.
> 2295, 90 L. Ed. 2d 865 (1986). *See also Brockington v. Certified Elec., Inc.*, 903
> F.2d 1523, 1530 (11th Cir. 1990). In the absence of well-developed maritime
> law pertaining to [Plaintiff's] negligence claims, [the Court] will incorporate
> general common law principles and Florida state law to the extent they do
> not conflict with federal maritime law. *See Just v. Chambers*, 312 U.S. 383,
> 388, 61 S. Ct. 687, 85 L. Ed. 903 (1941) ("With respect to maritime torts we
> have held that the State may modify or supplement the maritime law by
> creating liability which a court of admiralty will recognize and enforce
> when the state action is not hostile to the characteristic features of the
> maritime law or inconsistent with federal legislation."). *See also Becker v.
> Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004) ("federal maritime law
> incorporates common law negligence principles generally, and [state] law
> in particular"); *Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir. 1999) (in the absence
> of a well-defined body of maritime law relating to a particular claim, the
> general maritime law may be supplemented by either state law or general
> common law principles).

*Id.*; *see also Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278, 1282 (S.D. Fla.

2007).

A shipowner "is not liable to passengers as an insurer, but only for its negligence."

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). A shipowner owes its passengers a duty of "ordinary reasonable care under the circumstances." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). This "standard . . . requires, **as a prerequisite to imposing liability, that the [shipowner] have had actual or constructive notice of the risk-creating condition**, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.* (emphasis added).

Recently, the Eleventh Circuit in *Yusko v. NCL (Bahamas), Ltd.* clarified the law governing the standards applicable to vicarious liability types of negligence claims against cruise ships. 4 F.4th 1164, 1166 (11th Cir. 2021). It expressly held for the first time "that when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger **need not establish** that the shipowner had **actual or constructive notice** of a risk-creating condition." *Id.* (emphasis added).

*Yusko* also confirmed the need to establish notice for direct liability negligence claims (like the one Darby filed here) against a shipowner. *Id.* at 1167-68, 1170.

IV.     **Analysis**

A.     **Shotgun Pleading**

The Undersigned begins by making a brief observation about Plaintiff's Complaint and its impact on the instant summary judgment proceedings.

9

As noted above, Plaintiff pled a one-count negligence complaint listing eighteen different ways in which Defendant purportedly breached its duty of reasonable care and a nineteenth "catch-all" provision based on "other acts or omissions" which would be "revealed through discovery." [ECF No. 1, ¶¶ 36(a)-(s)].

Plaintiff's Complaint thus appears to be a shotgun pleading. *See Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012) (noting that a "[c]omplaint epitomizes a form of 'shotgun' pleading" where "[the plaintiff] begins Count I by alleging that [the] [d]efendant owed a duty to [the plaintiff] to provide her with "reasonable care under the circumstances" . . . then proceeds to allege at least twenty-one ways in which [the] [d]efendant breached this duty"). In the instant case, Carnival did not move to dismiss the Complaint as a shotgun pleading.

Shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (alterations adopted and internal quotation marks omitted).

Shotgun pleadings can be especially problematic at the summary judgment stage. As one court observed, "[s]hotgun pleadings . . . prevent the Court and the opposing party from determining which claims are brought, whether they are legally cognizable, and what evidence might be relevant or in dispute." *Cardinal v. Haines City, Fla.*, No. 8:19-CV-3137-KKM-TGW, 2021 WL 3418814, at *1 (M.D. Fla. Aug. 5, 2021). At the summary

judgment stage, "the deficient pleading" may compel a defendant "to seek summary judgment on a variety of claims without certainty as to which [claims the plaintiff] intended to pursue" and cause the court to labor in vain, "wast[ing] judicial resources working through the summary judgment papers and supporting evidence ultimately to realize that the complaint is hopelessly unclear and must be replead." *Id.*

A difficulty caused by a shotgun pleading is illustrated in the instant case. Here, Defendant has moved for summary judgment "as to all counts" on the ground that "Plaintiff has failed to adduce any evidence of Defendant's alleged negligent failure to clean, warn, install, maintain, inspect, provide inadequate [sic] medical care, or that Defendant caused or contributed to the risk-creating condition in any way[.]" [ECF No. 73, p. 2].

Presumably, Carnival believes this list encompasses all claims alleged in the Complaint. However, the Undersigned has found two claims -- negligent design[9] and negligent training-- that are not included in Defendant's *motion*, and there are possibly more. Of course, the Court may not grant summary judgment in Defendant's favor on grounds not raised by Defendant, without first providing notice to Plaintiff and a reasonable time to respond. Fed. R. Civ. P. 56(f)(2). As will be discussed in more detail

---

[9]     Negligent design is not one of the enumerated breaches in paragraph 36(a)-(s) of the Complaint. However, there are allegations regarding the design of the walkways/floor area in the facts section of the Complaint, [ECF No. 1, ¶¶ 18, 28], which Plaintiff then incorporates by reference in her negligence count. Again, this is one of the difficulties in dealing with a shotgun pleading.

below, Defendant waited until its reply brief to first raise the negligent design claim and never addressed plaintiff's negligent training claim. Therefore, Defendant is not entitled to summary judgment on at least these two claims.

With this pleading deficiency flagged, the Undersigned will now address the merits of Defendant's summary judgment motion.

### B.    Defendant's Summary Judgment Motion

Defendant seeks summary judgment on three grounds: (1) Plaintiff cannot show that Defendant had actual or constructive notice of the alleged risk-creating condition; (2) Plaintiff cannot show proximate cause; and (3) there is no evidence to support Plaintiff's "other general negligence claims." [ECF No. 73, p. 5-7].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Defendant's summary judgment motion.

### 1.    Actual or Constructive Notice

Defendant moves for summary judgment on the ground that Plaintiff cannot show that Defendant had actual or constructive notice of the risk-creating condition. [ECF No. 73, p. 5-6]. Carnival notes that Darby does not know what the liquid was or how long it had been on the floor before the incident. *Id.* at 2. Defendant further notes that there is no evidence that any Carnival employee was aware of the liquid before the incident. *Id.*

Where, as here, Plaintiff's negligence claims are premised on a theory of direct liability (as opposed to vicarious liability), Plaintiff must show that Defendant had actual

or constructive notice of the risk-creating condition. *See Yusko*, 4 F.4th at 1167 (noting that "[the Eleventh Circuit has] applied the notice requirement when a shipowner is alleged to be directly liable for a passenger's injuries through, for example, the negligent maintenance of its premises"); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) (noting that "[i]n this circuit, the maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition"). Thus, in many instances, "a cruise ship operator's liability 'hinges on whether it knew or should have known' about the dangerous condition." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322).

A plaintiff may adduce evidence of actual or constructive notice in a variety of ways. Substantially similar incidents may be used to establish constructive notice. *Guevara*, 920 F.3d at 720. A plaintiff may also present evidence that the risk-creating condition existed for a time period sufficient to invite corrective measures. *Id.* In some instances, "a warning sign or warning label may be evidence that a defendant had actual or constructive notice of a dangerous condition." *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F.Supp.3d 1311, 1323 (S.D. Fla. 2015); *see also Sorrels*, 796 F.3d at 1289 (stating that testimony from the defendant's employees "that warning signs were sometimes posted on the pool deck after rain . . . [was] enough to withstand summary judgment as to notice"). However, "[n]ot all warning signs will be evidence of notice; there must also be a connection between the warning and the danger. *Guevara*, 920 F.3d at 721.

13

Darby argues that, in the instant case, there is "abundant evidence of notice." [ECF No. 80, p. 3]. Specifically, Plaintiff seeks to rely on (1) fourteen purportedly substantially similar incidents, (2) Defendant's meeting minutes and work orders, (3) Plaintiff's expert's report, (4) industry standards, (5) Defendant's "own the spill" policies and procedures, (6) Defendant's Slip Resistance Standards and Rating Table [ECF No. 80-6] (produced by Defendant in another case, *Kroll v. Carnival*, and made part of the record here), and (7) the deposition testimony of Defendant's corporate representative. *Id.* at 4-8; [ECF No. 87, pp. 2-9].

The Undersigned begins by noting the lack of evidence as to **actual notice**. There is no record evidence that anyone reported the liquid before the incident or that a crewmember knew about the liquid beforehand and simply failed to take corrective measures. There is also no record evidence that Defendant knew about the unreasonable slipperiness of the tile when wet. Since the record evidence does not support a genuine issue of material fact as to **actual notice**, the issue becomes whether the evidence proffered by Plaintiff is sufficient to create a genuine issue of material fact as to whether Defendant had *constructive* notice. For the reasons discussed below, the Undersigned finds that it does.

### a.      Substantially Similar Incidents

"[A] plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question

must have caused the prior accident.'" *Guevara*, 920 F.3d at 720 (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 2019)).

Plaintiff cites to fourteen prior incidents which she contends are "substantially similar prior incidents in the subject area on the subject ship and its sister ships." [ECF No. 80, p. 4]. Plaintiff highlights nine of these incidents as being "especially substantially similar" because they involved "passengers [who] slipped on wet surfaces near the Guest Services Desk on deck 3," and four of these incidents occurred on the *Carnival Valor*. *Id.* at 4-5.

Carnival disputes that any of the proffered fourteen prior incidents were substantially similar to Plaintiff's incident because "[n]one of the incidents cited by Plaintiff occurred near the **shore excursions desk** on Deck 3 of the subject vessel," thus, "none of these incidents are substantially similar to establish any type of notice of the **condition of the flooring near the shore excursions desk on Deck 3** at the time of Plaintiff's alleged incident." [ECF No. 84, p. 3] (emphasis added). Defendant argues that Plaintiff must show that these passengers fell on a substance on the floor, in the same area as Plaintiff and were wearing the same or similar type of footwear as Plaintiff. *Id.* at 4.

Defendant further notes that the tile is not the same among the different ships in this class: "[w]hile the general configuration of the Conquest ships is the same, the slip resistance of the different types of tile flooring among the ships cannot be the same." [ECF

No. 89, p. 4]. The Defendant cites to the deposition testimony of its corporate representative who testified as follows:

> Q[.]   The flooring in that area, is it tile in all of the sister ships?
>
> A[.]   There are different -- yeah. I mean, different tiles, different types of tile, but yes, there is -- the areas that were searched for you based on the scope of the priors is slip or trip and fall on tiles.

[ECF No. 87-3, 52:24-53:5].

The Undersigned finds that at least some of the prior incidents cited by Plaintiff were substantially similar to Plaintiff's incident. Although Defendant relies on the testimony of its corporate representative to argue that the flooring across this class of ships is different, the Undersigned finds the testimony of Defendant's corporate representative vague. Defendant's corporate representative's testimony is that different types of tile existed between the ships in this class. However, this testimony is not sufficiently detailed enough to determine *which* ships had similar tile to th*e Carnival Valor* and which ships did not. [10] Thus, this testimony is not particularly helpful in discounting the prior incidents which occurred on other ships in this class. At bottom, the testimony is that *all* of the prior incidents involved falls *on tile*.

Moreover, at least some prior incidents took place on deck 3 of the *Carnival Valor* (across from the shore excursions desk area where plaintiff slipped) and involved

---

[10]   The record does not appear to indicate whether Plaintiff attempted to obtain more specific discovery concerning which ships in this class used a tile surface that was similar to the *Carnival Valor*.

passengers who slipped on wet tile. Although Plaintiff slipped near the shore excursions desk and these prior incidents occurred near the guest services desk, the two desks were on opposites sides of the atrium area from each other, [ECF No. 87-1], and Defendant's corporate representative testified that the tile was **continuous throughout deck 3**. [ECF No. 87-3, pp. 9:13-10:3, 12:24-25].

Defendant cites to *Sorrells,* where the Eleventh Circuit affirmed the district court's finding that 22 prior incidents were not sufficiently similar, 796 F.3d at 1288, and notes that Plaintiff has the burden of showing substantially similar circumstances "such as whether there was a substance on the floor or choice of footwear." [ECF No. 84, p. 3-4].

"The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels*, 796 F.3d at 1287. The Eleventh Circuit has held that prior incidents are sufficiently similar when the conditions surrounding the two incidents are similar enough to allow the jury to draw a reasonable inference concerning the Defendant's ability to foresee the type of occurrence and its result. *Id.* (discussing *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985)

Darby's theory of liability is that Carnival used an unreasonably slippery floor which becomes especially slippery when wet. Construing the facts in the light most favorable to Plaintiff, as the Court must do at this juncture in the proceedings, the record reveals a genuine issue of material fact as to whether Defendant had constructive

knowledge of the risk-creating condition based on substantially similar prior incidents where other passengers slipped on liquid while walking on the same or similar tile.

Moreover, and as will be discussed below, Plaintiff has cited to other evidence which presents a genuine issue of material fact as to whether Defendant had constructive notice of the risk-creating condition.

### b.      Defendant's Meeting Minutes and Work Orders

Plaintiff also cites to Defendant's meeting minutes, which noted the following occurrence:

> Entertainment Director mentioned that **whenever the wooden doors at Deck 3 guest gangway are opened early prior to ship's arrival in port of Galveston (homeport), the humidity and condensation makes the tiled floor in the atrium area wet and slippery**. **He also asked not to open these doors until the vessel is docked in homeport** and the gangways have been connected **to avoid any slip and fall accident or injury**.

[ECF No. 80-3, p. 2] (emphasis added).

With respect to the meeting minutes, Defendant argues that Plaintiff "fails to connect the dots" between the information in the meeting minutes and Defendant's alleged notice of a hazardous condition. [ECF No. 84, p. 6]. Defendant insists that the meeting minutes are "immaterial" and states that "at the time of Plaintiffs' [sic] claimed accident the vessel was departing Galveston, the 'opposite scenario' from what was discussed in the minutes." *Id.* However, Defendant does not explain why humidity and condensation would be a concern only when the vessel was *arriving* in Galveston, but not when it was *departing* Galveston.

Notably, Defendant's corporate representative's deposition testimony suggests that condensation and humidity are a concern irrespective of whether the vessel is arriving to port or departing from port. She testified that: "If there is -- **during embarkation or debarkation**, if doors are propped open and there's air conditioning inside that's meeting the hot air outside, **condensation can build up, so [crewmembers] will be mopping those areas**. It's -- it is a high-traffic area that is under constant supervision and cleaning." [ECF No. 87-3, p. 15] (emphasis added).

Plaintiff also cites to numerous work orders related to the replacement of tiles on deck 3. [ECF No. 80-5]. Some of these work orders detailed the tile being loose with water underneath the tile. *Id.* at pp. 5, 8-10. Plaintiff attempts to connect these work orders with the information contained in the meeting minutes by arguing that this evidence:

> clearly shows that Defendant not only was aware of the problem of the floor in the subject atrium area on deck 3 near the guest services desk becoming wet, and not only discussed it in its meeting minutes, but Defendant also attempted several times to replace the tiles due to this water issue damaging the tiles.

[ECF No. 80, p. 7]. However, this argument is speculative at best.

There is no record evidence that the condensation and humidity described in the meeting minutes were such that it caused the loosening or damaging of tile. Moreover, Defendant's corporate representative testified that the water referenced in some of these work orders were the result of plumbing leaks. [ECF No. 87-3, pp. 23:1-24:4]. Plaintiff has not presented any evidence contradicting this testimony.

Nonetheless, the meeting minutes show some concern about the tile in the atrium area becoming wet and slippery when the doors were open near the port of Galveston. This evidence, coupled with prior incidents and other evidence discussed below, is sufficient to create a genuine issue of material fact as to whether Defendant had constructive knowledge of the unreasonable slipperiness of the tile when wet.

  **c.**  **Industry Standards, Plaintiff's Expert's Report, Defendant's "Own the Spill" Policies and Procedures, and Defendant's Slip Resistance Standards and Ratings Table**

Plaintiff also cites industry standards, her expert's report, Defendant's "own the spill" policies and procedures and Defendant's own Slip Resistance Standards and Rating Table.  [ECF No. 80, pp. 7-9].

With respect to industry standards, Plaintiff notes that "the industry minimum standard for coefficient of friction is normally .50, but is a minimum of .60 in marine environments (where surfaces are more likely to become wet)." [ECF No. 80, p. 8 (citing Plaintiff's Expert's Report [ECF No. 80-4, p. 30])]. Plaintiff notes that her expert, Francisco De Caso, tested the slip resistance of the subject tile and "found that it had a slip resistance of below .18, well below the minimum industry standard, and below even the slip resistance of ice (.21)." *Id.* Plaintiff thus states that "this shockingly low slip resistance not only violates the industry's standards, it also violates Defendant's own policies and procedures for slip resistance, as Defendant's own recognized minimum slip resistance values for the areas of its ship do not include any value lower than .42." *Id.* (citing

Defendant's Slip Resistance Standards and Rating Table [ECF No. 80-6]). Defendant's corporate representative also confirmed that Defendant considers a coefficient of friction of .42 as the standard. [ECF No. 87-3, p. 64:20].

Plaintiff also seeks to rely on Defendant's "own the spill" policies and procedures. She argues that these policies and procedures "clearly recognize that wet floors are a common and highly preventable cause of slips and falls" and "even identify Atrium Lobbies (which, as discussed above, was the area in which Plaintiff fell) as one of the "AREAS OF MOST POTENTIAL SLIPS AND FALLS." [ECF No. 80, p. 8] (citing [ECF No. 80-7, pp. 1, 5-6, 11-13, 15] (capitalization in original)).

Darby further cites the deposition testimony of Defendant's corporate representative. [ECF No. 87, p. 9]. Defendant's corporate representative testified that there were crewmembers assigned to deck 3 who were "walking around constantly," "[s]o every 5, 10, 15 minutes, they're just traversing the area . . . looking for any transitory spills, substances, problems, food substances" and that their task was "cleaning that up." [ECF No. 87-3, p. 14:25-15:8]. She further explained that "during embarkation or debarkation, if doors are propped open and there's air conditioning inside that's meeting the hot air outside, condensation can build up, so [crewmembers] will be mopping those areas." *Id.* at 15:9-13. She referred to this location as "a high-traffic area that is under constant supervision and cleaning." *Id.* at 15:13-14.

Defendant argues that the industry standards cited in Plaintiff's expert's report are non-binding, land-based standards that are not relevant or applicable to accidents which occur on cruise ships. [ECF No. 89, p. 4].

The Undersigned notes that Defendant does not address its own Slip Resistance Standards and Rating Table [ECF No. 80-6] or its corporate representative's testimony, both establishing a standard coefficient of friction value of .42.

Defendant further argues that the existence of its "own the spill" policies and procedures is insufficient to establish notice. [ECF No. 89, p. 5]. Defendant states that there is no record evidence that any crew members noticed the liquid before the incident. *Id.*

As discussed in more detail below, for summary judgment purposes, the Undersigned finds that Defendant's "own the spill" policy (noting that atrium lobbies were among the areas that had the most potential for slips and falls), the Defendant's corporate representative's testimony acknowledging that the area was a "high traffic" area that was under constant supervision and cleaning, and Defendant's own Slip Resistance Standards and Rating Table and corporate representative's testimony concerning a coefficient of friction standard of .42 establish a question of fact as to whether Defendant had constructive notice of the risk-creating condition, an unreasonably slippery floor which becomes especially slippery when wet.

In *Francis v. MSC Cruises, S.A.*, Judge Moreno, in granting the Defendant's summary judgment motion, provided a comprehensive overview of recent case law authority concerning constructive notice in cruise ship direct liability personal injury cases. No. 18-61463-CIV, 2021 WL 2661149, *2-6 (S.D. Fla. June 29, 2021).

Judge Moreno, citing *Carroll* and *Sorrels*, noted that a cruise ship owner's failure to adhere to industry standards can create a genuine dispute of material fact concerning the **standard of care** (as opposed to notice of an allegedly dangerous condition). *Francis*, 2021 WL 2661149, *3 (citing *Carroll*, 955 F.3d at 1269-70; *Sorrels*, 796 F.3d at 1282). However, he also held that industry standards may, in some cases, show that a dangerous or defective condition existed for a sufficient period of time to invite corrective measures (i.e., evidence of constructive notice). *Id.* at *6**.**

As outlined in *Francis*, an industry standard can be sufficient to place a defendant on notice of an alleged dangerous condition, which was the result of the defendant's negligent maintenance of an area or object, only when (1) the plaintiff puts forth evidence of industry standards relating to "the timing and frequency" of a required inspection and (2) such evidence raises a "reasonable inference that [the cruise line] should have known about an allegedly dangerous condition." *Id.* at *6.

In the instant case, Plaintiff's expert, Francisco De Caso, provides conclusions about industry standards concerning the coefficient of friction—but does not provide any information, evidence, or opinions about whether an industry standard requires

23

inspections to test the coefficient of friction on any specific flooring surface. And, given this omission, he did not give any opinions that a failure to follow a standard concerning the timing of inspections created a reasonable inference about notice of an allegedly dangerous condition.

As such, Dr. De Caso's expert report about industry standards on the coefficient of friction, is not, in and of itself, sufficient to generate evidence from which a jury could infer that Defendant was on constructive notice that the floor at issue was unreasonably slippery. Plaintiff, therefore, cannot successfully rebut Defendant's summary judgment motion on failure to establish constructive notice by relying on the industry standard concerning the coefficient of friction.

However, as outlined above, there is **other** record evidence concerning the coefficient of friction (which relates to Plaintiff's theory that the floor surface was unreasonably slippery) which Plaintiff can rely on to avoid an adverse summary judgment ruling on constructive notice. Specifically, Defendant's own Slip Resistance Standards and Rating Table (which were produced by Carnival in another case, *Kroll v. Carnival*, and which are in the record here at [ECF No. 80-6]) can support a jury inference of constructive notice. In addition, Carnival's corporate representative testified that Carnival's standard for adequate slip resistance when wet is .42, just like in *Kroll*. [ECF No. 87-3, p. 64:20]. Moreover, Carnival's policies and procedures identify atrium lobbies

as one of the "areas of most potential slips and falls." [ECF No. 80-7, p. 6] (capitalization omitted).

These factors, combined with others discussed earlier in this Report and Recommendations (such as the prior incidents), are sufficient to allow a jury to infer that Defendant was on constructive notice of the purportedly dangerous condition (i.e., an unreasonably slippery floor which becomes especially slippery when wet). But they do not mean that Defendant was, in fact, on constructive notice of the allegedly dangerous condition. They simply mean that there is enough of a factual dispute to permit a jury to reach that fact-based assessment.

At trial, where a jury is not required to construe all possible inferences in the non-movant's favor, a jury could also easily conclude that Carnival was not on constructive notice of the condition.

In sum, construing the facts in the light most favorable to Plaintiff, the Undersigned concludes that there is sufficient evidence in the form of prior substantially similar incidents, meeting minutes, Defendant's "own the spill" policies, Defendant's Slip Resistance Standards and Rating Table from the *Kroll* case, and the testimony of Defendant's corporate representative to support a genuine issue of material fact concerning whether Defendant had constructive notice of an unreasonably slippery floor which becomes especially slippery when wet. Defendant is not entitled to summary judgment on the issue of constructive notice.

2.      **Proximate Cause**

Defendant also moves for summary judgment on the ground that Plaintiff cannot

meet the proximate cause element of a maritime negligence claim. [ECF No. 73, p. 6-7].

The entirety of Defendant's argument on the issue of proximate cause, at least as far as

the summary judgment *motion* is concerned, is as follows:

> In order to survive a motion for summary judgment, Plaintiff must submit
> factual support to the Court in order to establish **a causal connection**
> **between her injuries and Defendant's alleged breach of a supposed duty**
> **owed to her**. . . . Plaintiff has not and cannot pinpoint an alleged duty that
> has been breached with demonstrable evidence. Therefore, she cannot
> show that her damages were causally linked to any potential breach by
> Defendant.

[ECF No. 73, p. 7] (emphasis added).

The sum total of Defendant's argument is *three sentences long* and one of those three

sentences expressly states that the issue Defendant is arguing is lack of "factual support

. . . to establish a **causal connection** between [Plaintiff's] **injuries** and Defendant's alleged

breach of a supposed **duty owed to her**, [ECF No. 73, p. 7] (emphasis added).

Nevertheless, Plaintiff inexplicably construes Defendant's argument to mean that

Plaintiff cannot prove she suffered actual harm [ECF No. 80, p. 10-12], a different element

of her maritime negligence count. [11] In other words, failure to establish proximate cause

is a different argument than failure to prove the existence of an actual physical injury.

---

[11]      Plaintiff also takes issue with the sufficiency of Defendant's summary judgment
motion. [ECF No. 80, p. 9]. However, "[o]nce the moving party requests summary
judgment on the absence of necessary evidence, the nonmoving party must 'go beyond

Plaintiff does, however, cite a case from the former Fifth Circuit for the proposition that the issue of proximate cause should be left to the jury. [ECF No. 80, p. at 10 (citing *Sosa v. Coleman*, 646 F.2d 991, 995 (5th Cir. 1981))].[12]

To reiterate, the elements of a maritime negligence claim are as follows: "(1) the [shipowner] had a duty to protect the plaintiff from a particular injury, (2) the [shipowner] breached that duty, (3) **the breach actually and proximately caused the plaintiff's injury**, and (4) the plaintiff suffered actual harm." *Yusko*, 4 F.4th at 1167-68 (emphasis added). "It is well-settled that each element, **including causation**, is essential to Plaintiff's negligence claim for purposes of defeating summary judgment and Plaintiff cannot rest on the allegations of her complaint." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1238 (S.D. Fla. 2006) (citing *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (emphasis added)).

For all practical purposes, Plaintiff takes Carnival's argument to mean that she cannot show that she in fact *has* physical injuries which were proximately caused by the incident. Plaintiff states that she "clearly suffered pain . . . as a direct result of her

---

the pleadings and . . . designate specific facts showing that there is a genuine issue for trial.'" *Jones v. Rutherford*, 546 F. App'x 808, 810 (11th Cir. 2013) (*per curiam*) (quoting *Celotex Corp.*, 477 U.S. at 324).

[12]   In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981), the newly-formed Eleventh Circuit Court of Appeals held that all decisions of the Fifth Circuit Court of Appeals as that court existed on September 30, 1981, would be binding as precedent in the newly-formed Eleventh Circuit. Therefore, this June 1, 1981 decision of the former Fifth Circuit is considered Eleventh Circuit law.

incident" and cites to her deposition transcript wherein she testified that she told the

person at the shore excursions desk that she was "in horrible pain." [ECF No. 80, p. 10

(quoting Plaintiff's Deposition [ECF No. 71-1, p. 63:24-64:1)]. Plaintiff also cites to her

sworn interrogatory responses, where she lists her injuries, the various surgical

procedures she underwent, and her current physical limitations which she attributes to

the incident. *Id.* at 13 (citing Plaintiff's Responses to Interrogatories [ECF No. 80-8, p. 4]).

In further support of her argument that she suffered tangible physical injuries as

a result of the incident, Plaintiff cites to a report from Dr. Caesar Ceballos, an orthopedic

surgeon and sports medicine specialist. [ECF No. 80, p. 11].[13] In this report, Dr. Ceballos

lists various injuries to Plaintiff's left shoulder, lower back, and left knee which were

caused by, or worsened, as a result of the incident. [ECF No. 80-9, p. 17]. Darby further

states that she can rely on her treating physicians to establish causation but does not

---

[13]     Dr. Ceballos is not a treating physician. Dr. Ceballos' report makes clear that he examined Plaintiff on one occasion (February 20, 2020), at the request of Plaintiff's counsel. [ECF No. 80-9, p. 7]. While Dr. Ceballos refers to his examination of Plaintiff as an "Independent Medical Examination (IME)," that term is not used in the Federal Rules of Civil Procedure, nor is it fair to describe Dr. Ceballos' examination of Plaintiff (at her counsel's request) as "independent." It is also not a compulsory examination under Rule 35. *See Frasca v. NCL (Bahamas) Ltd.*, No. 12-20662-CIV, 2013 WL 12324500, at *2 (S.D. Fla. May 9, 2013) (noting that "[l]itigants, their attorneys, doctors, judges and others involved in an examination taken under Fed. R. Civ. P. 35 often use the term 'independent medical examination' ('IME') when discussing a medical examination taken of a personal injury plaintiff **at defendant's request**," but "it is more accurate to view the examination as a compulsory examination.") (emphasis added).

identify any of these treating physicians or cite to their medical records. [ECF No. 80, p. 11].

Carnival disputes that Plaintiff may rely on her treating physicians to testify about the cause of her injuries. [ECF No. 84, p. 8]. Whether Plaintiff may or may not rely on her treating physicians to testify about the cause of her injuries is not properly before the Court. The issue was raised in response to a summary judgment motion. It has not been raised in a motion *in limine* or a motion to strike a witness for failure to meet the requirements of expert disclosures under Fed. R. Civ. P. 26(a)(2). The issue has not been briefed and is not otherwise properly pending before the Court. Thus, the Undersigned will not address in this Report and Recommendations whether Plaintiff may at trial use any of her treating physicians to testify about the cause of her injuries.

Notwithstanding Plaintiff's confusion regarding which element of her negligence claim Defendant has moved for summary judgment on, the record evidence demonstrates a genuine issue of material fact regarding whether Defendant's alleged breaches, including the failure to warn, proximately caused Plaintiff's injuries.

"To prove causation, a plaintiff must establish 'a cause and effect relationship . . . between the alleged tortious conduct and the injury'—that is, cause in fact (or 'actual' or 'but-for causation')—as well as the 'foreseeab[ility]' of the 'conduct in question' producing the alleged harm—i.e., 'proximate causation.'" *Marabella v. NCL (Bahamas),*

*Ltd.*, 437 F. Supp. 3d 1221, 1229 (S.D. Fla. 2020) (quoting *Bell v. Beyel Bros., Inc.*, No. 2:16-CV-14461, 2017 WL 1337267, at *3 (S.D. Fla. Apr. 7, 2017)).

Proximate cause is generally an issue of fact for the jury to decide. *See Stahl v. Metro. Dade Cnty.*, 438 So.2d 14, 21 (Fla. 3d DCA 1983) (noting proximate cause is "generally for juries to decide using their common sense upon appropriate instructions, although occasionally, when reasonable people cannot differ, the issue has been said to be one of law for the court."). "Unless a movant can show unequivocally that there was no negligence, or that plaintiff's negligence was the sole proximate cause of the injury, courts will not be disposed to granting a summary judgment in his favor." *Wills v. Sears, Roebuck & Co.*, 351 So. 2d 29, 31 (Fla. 1977).

The Court should not disturb that principle here where the record in the instant case reveals sufficient evidence from which a jury could find that Defendant's acts or omissions proximately caused Plaintiff's injuries. For instance, a jury could conclude that had Defendant warned Plaintiff about the floor surface being unreasonably slippery when wet, she could have been extra vigilant and otherwise avoided the incident. Plaintiff testified at her deposition that she did not see the liquid on the floor and, had she seen it, she would have gone around it. [ECF No. 71-1, p. 59:10-11].

Accordingly, Carnival has not shown that it is entitled to summary judgment on the issue of proximate cause.

### 3.    Plaintiff's Other General Negligence Claims

Defendant also seeks summary judgment on Plaintiff's other negligence claims.

Defendant's arguments as to these other negligence claims are brief and scattered

throughout its motion. In the background section, for instance, defendant states that:

> There is no record evidence that Defendant participated in the **installation** of the tile upon which Plaintiff slipped or had notice that it was "inherently and unreasonably dangerous" other than Plaintiff's allegations in her Complaint. There is no record evidence that Defendant **failed to implement proper cleaning procedures or** that **any procedures in place were not followed** other than Plaintiff's allegations in her Complaint. There is no record evidence that Defendant **failed to render appropriate and proper medical care** other than Plaintiff's allegations in her Complaint.

[ECF No. 73, p. 2] (emphasis added). Defendant continues this theme on page 7 of its

motion, under the heading "Plaintiff Failed to Adduce Evidence of Defendant's

Negligence for Her Other General Negligence Counts."[14] *Id.* at 7 (some capitalization

omitted). There, Defendant states that:

> The record evidence is notably devoid of any evidence demonstrating Defendant participated in the **installation of the subject flooring**, had a **duty to warn** of a known existing dangerous condition, had notice that it needed to and **failed to take any sort of remedial measures** for any existing dangerous condition with the flooring that caused Plaintiff's incident, or that it **rendered inadequate medical care**. The only thing presented in this matter to support those contentions are the conclusory allegations within Plaintiff's complaint. There is no evidence of her negligence claims, and where there is no evidence, summary judgment is appropriate.

---

[14]    As previously noted, Plaintiff's Complaint consists of a single negligence count, eighteen breaches (theories of liability), and a nineteenth "catch-all" provision. [ECF No. 1].

*Id.* (emphasis added).

Defendant's reply also adds the argument that "Plaintiff has produced no evidence that shows Carnival actually **designed** the subject vessel or any element thereof, such as the flooring." [ECF No. 84, p. 2] (emphasis added). However, since there is no mention of plaintiff's negligent design claim in Defendant's motion, the Court should not entertain arguments raised for the first time in a reply brief. *See Lipkin*, 93 F.Supp.3d at 1322 n.3 (refusing to consider argument raised for the first time in a reply brief filed in support of a summary judgment motion).

Defendant has put Plaintiff on notice that it is seeking summary judgment on Plaintiff's claims based on the alleged "negligent failure to clean, warn, install, maintain, inspect, provide inadequate [sic] medical care," failure to implement proper cleaning procedures, failure to follow any procedures already in place, or failure to take remedial measures. [ECF No. 73, pp. 2, 7].

"Once the moving party requests summary judgment on the absence of necessary evidence, the nonmoving party must 'go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial.'" *Jones*, 546 F. App'x at 810 (quoting *Celotex Corp.*, 477 U.S. at 324).

With the exception of the failure to warn claim, the failure to take remedial measures claim and the negligent design claim, Plaintiff does not specifically address in her filings the other claims on which Defendant moves for summary judgment.

As to the failure to warn claim, Plaintiff argues that summary judgment should not be granted for Defendant because "Plaintiff's testimony makes clear that she did not see the subject liquid on the floor, nor could she have known that the slip resistance was lower than that of ice." [ECF No. 80, p. 12].

As to the failure to take remedial measures claim, Plaintiff states that:

Defendant's assertion that it had no notice that it needed to take any remedial measures to correct the issue of the floor in the atrium area from becoming wet is plainly false, since as discussed above, Defendant itself admitted in its meeting minutes that it needed to take corrective action on this issue, in addition to the numerous prior incidents, work orders, and the industry's standards as well as its own standards for slip resistance that should have alerted it to the need to make its floors less slippery when wet.

[ECF No. 80, p. 12].

In her supplemental response, Plaintiff addresses her negligent design claim. [ECF No. 87, p. 11]. Plaintiff notes that in *Hoover v. NCL (Bahamas) Ltd.*, this Court denied a defendant's summary judgment motion on a negligent design claim because the plaintiff had presented sufficient evidence to create an issue of fact as to whether the defendant had approved the design of a stairway. 91 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020). Plaintiff notes that in the instant case, Carnival's corporate representative testified that while Defendant did not choose the specific tile for deck 3 of the *Carnival Valor*, "[u]ltimately [Carnival] would have approved of it." *Id.* (citing [ECF No. 87-3, pp. 9:13-10:3]).

Defendant is entitled to summary judgment on those claims which Plaintiff did not specifically address in her briefs: Plaintiff's claims based on the negligent failure to

clean, install, maintain, inspect, provide inadequate [sic] medical care, failure to implement proper cleaning procedures and the failure to follow any procedures already in place. "Summary judgment is appropriate against a party that 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones*, 546 F. App'x at 810 (quoting *Celotex Corp.*, 477 U.S. at 322).

However, there are genuine issues of material fact precluding summary judgment for Defendant on Plaintiff's failure to warn, failure to take remedial measures and the negligent design claim.[15] Additionally, Carnival would not be entitled to summary judgment on claims which were raised in Plaintiff's shotgun pleading, but were not addressed in Defendant's summary judgment motion. The case should be allowed to proceed before a jury on these claims.

## V.     Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Defendant's summary judgment motion. Defendant is entitled to summary judgment on Plaintiff's negligent failure to clean,

---

[15]     Carnival would not be entitled to summary judgment on Plaintiff's negligent design claim even if it did not belatedly (and improperly) raise it for the first time in its reply brief. A defendant "can be liable only for negligent design of . . . [an] area if it had actual or constructive notice of such hazardous condition." *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837 (11th Cir. 2012). As discussed in this Report and Recommendations, there is a genuine issue of material fact concerning whether Defendant had constructive notice of the unreasonable slipperiness of the tile when wet.

install, maintain, inspect, provide inadequate medical care, failure to implement proper cleaning procedures and the failure to follow procedures already in place. However, Plaintiff's failure to warn, the failure to take remedial measures and the negligent design claims should be allowed to proceed to a jury as well as any other claims[16] on which Defendant did not move for summary judgment.

## VI.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,

---

[16]    Of course, the District Court may always enter summary judgment, if warranted, on any claims not raised in Defendant's summary judgment motion, after giving Plaintiff proper notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(1).

149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY   RECOMMENDED**   in   Chambers,   in   Miami,   Florida,   on

December 3, 2021.

_____

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record